IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTONIO WHITE,
      Petitioner,

vs.                                Case No.:  3:10cv182/MCR/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 10).  Petitioner filed a reply (doc. 12).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 10).[2]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-5100, with one count of burglary of an occupied dwelling (Count 1) and

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 10).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

one count of grand theft ($300 or more but less than $5,000) (Count 2) (Ex. C at 1).  Following a jury trial on April 2 and 4, 2007, he was found guilty as charged (Ex. B at 28–29, Ex. D).  On July 17, 2007,  Petitioner was adjudicated guilty and sentenced to ten (10) years of imprisonment on Count 1 and a concurrent term of five (5) years of imprisonment on Count 2, with pre-sentence credit of 282 days (Ex. C at 43–54, 59–66).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-4353 (Ex. E).  On October 31, 2008, the First DCA reversed the grand theft conviction and remanded with directions that the trial court enter an amended judgment for petit theft and re-sentence Petitioner to time served on that count; the appellate court affirmed the burglary conviction (Ex. H).  White v. State, 993 So. 2d 611 (Fla. 1st DCA 2008).  The mandate issued November 18, 2008 (Ex. I).  Petitioner did not seek further review.  On December 1, 2008, the trial court entered a corrected judgment in accordance with the appellate court's directions (Ex. J).

On August 18, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L at 1–19).  The state circuit court summarily denied the motion on December 7, 2009 (id. at 20–27).  Petitioner appealed the decision to the First DCA, Case No. 1D10-0391 (id. at 75).  The First DCA affirmed the decision per curiam without written opinion on April 30, 2010, with the mandate issuing May 26, 2010 (Exs. M, N).  White v. State, 34 So. 3d 8 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on June 1, 2010 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One:  "Counsel was ineffective for failing to investigate witness."

Petitioner contends defense counsel was ineffective for failing to depose and present testimony from Damon Turner, the man who was with Petitioner when he was arrested for stealing a generator (doc. 1 at 4, 7–9).[4] Petitioner asserts Mr. Turner would have testified at trial that he asked Petitioner to drive him to Mrs. King's (the victim) backyard shed and assist him in picking

---

[4] Petitioner spells Mr. Turner's first name in two ways, "Damian" and "Damon" Turner (*see* doc. 1 at 7; doc. 12 at 1). The record demonstrates that Mr. Turner's name is spelled "Damon" (*see* Ex. L at 61); therefore, the court will use that spelling in this Report.

up the generator (*id.* at 7). Petitioner states Turner told him he had worked for Mrs. King in the past and was authorized to be in her backyard and pick up the generator (*id.*). Petitioner states he told counsel the substance of Turner's proposed testimony and that Turner was available to testify, and he provided counsel with Turner's contact information (*id.* at 9). Petitioner contends Turner's testimony would have corroborated his own testimony that he did not know the taking of generator was unauthorized (*id.* at 8–9). He contends if the jury had heard Turner's testimony, the jury would have acquitted him, because the intent element would not have been satisfied (*id.* at 9).

Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 10 at 9–14).

      1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on

ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[5]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."  Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).  However, "the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact."  *Id.*  When considering the legal question of the reasonableness of counsel's decision, the court is mindful that the Supreme Court has described strategic decisions of counsel as "virtually unchallengeable."  Strickland, 466 U.S. at 690.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Claim One in his Rule 3.850 motion (Ex. L at 10–12).  The state circuit court adjudicated the claim as follows:

> Defendant claims that counsel should have investigated and deposed Defendant's co-defendant in the instant case, Damon Turner, because if Mr. Turner would have testified at trial, he would have corroborated Defendant's testimony. Defendant and Mr. Turner stole a generator, however, Defendant alleges that Mr. Turner "manipulated" Defendant by telling him that he had permission to take the generator.  Defendant claims that he told counsel about Mr. Turner, how to contact him, and that he was available to testify.
>
> First, the victim testified that she saw Defendant and Mr. Turner taking the generator, that she yelled at them to stop and that she was calling the police.[FN 4]

She further testified that both Defendant and Mr. Turner stopped, turned around and stared at her.  Therefore, Defendant's claim that he thought that they had permission to take the generator is weak.  Next, it is highly unlikely that Mr. Turner, who was still facing charges in this case at the time of Defendant's trial, would have testified in a self-incriminating fashion.  In fact, the State commented at trial that Defendant and Mr. Turner were "pointing fingers" at each other.[FN 5]  Finally, the record reflects that Mr. Turner was committed to Florida State Hospital due to his incompetence to proceed at the time of Defendant's trial.[FN 6]  Therefore, he was not available to testify at Defendant's trial.  Counsel cannot be found deficient for failing to call Mr. Turner to testify because he was not available.  Accordingly, Defendant is not entitled to relief on this claim.

> [FNs 4, 5:  references to trial transcript]
>
> FN 6:  <u>See</u> Attachment 4, <u>Order Adjudging Defendant [Damon Turner] Incompetent to Proceed and Commitment to Department of Children and Families</u>, filed April 2, 2007.  Defendant's trial in the instant case was held on April 2 and 4, 2007.

(Ex. L at 22–23).  The First DCA affirmed the circuit court's decision without a written decision (Ex. N).

Initially, the state circuit court identified the <u>Strickland</u> standard as the correct legal standard applicable to Petitioner's claim (Ex. L at 20–21).  Additionally, Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence.  Therefore, those factual findings are presumed correct, including the finding that Mr. Turner was committed to Florida State Hospital due to his incompetence at the time of Petitioner's trial.  Petitioner thus is entitled to federal habeas relief only if he demonstrates that the state court's adjudication of the claim was an unreasonable application of <u>Strickland</u>.

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).  Hence, Petitioner must first make a sufficient factual showing, substantiating the proposed testimony of the witness.  Such evidence might be a sworn affidavit or deposition from the potential witness stating to what he would have testified.

Petitioner failed to show Mr. Turner would have provided testimony favorable to the defense. Petitioner did not present, in state court or this federal proceeding, evidence of actual testimony or an affidavit from Damon Turner.  Further, the fact that Mr. Turner had criminal charges pending against him concerning the same incident suggests he would not have exculpated Petitioner and potentially incriminated himself by testifying that he told Petitioner he had permission to take the generator.   Indeed, the prosecutor's comment during a bench conference that Mr. Turner and Petitioner were "pointing fingers at each other" suggests Mr. Tuner would not have provided testimony favorable to Petitioner either at a deposition or during trial (*see* Ex. D at 86). Additionally, Turner's declared incompetency at the time of Petitioner's trial disqualified him from testifying.  *See* Fla. Stat. § 90.601 (every person is competent to be a witness except as otherwise provided by statute); *see also* Fla. Stat. § 916.106 ("incompetent to proceed" means unable to proceed at any material stage of a criminal proceeding, including trial of the case and any pre-trial hearing involving questions of fact on which the defendant might be expected to testify); Fla. Stat. § 916.12 (a defendant is incompetent to proceed if the defendant has no rational, as well as factual, understanding of the proceedings against him).

Moreover, it is apparent from the record that Petitioner testified without objection to all of the pertinent information he alleges Mr. Turner would have provided.  Petitioner testified that early in the morning of October 9, Mr. Turner "asked me to give him a ride to pick up his generator from doing some work he did for this lady" (Ex. D at 83).  He testified he had no information that led him to believe that the taking of the generator would be a theft (*id.* at 88).  During closing argument, defense counsel argued Petitioner did not have the requisite intent to support a conviction of either offense with which he was charged (*id.* at 97–100, 101).  Because the jury already heard the facts Petitioner contends Mr. Turner would have provided, Petitioner failed to show a reasonable probability the jury would have acquitted him if Mr. Turner had testified.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to habeas relief on Ground One.

B.      Ground Two:  "Counsel was ineffective for failing to argue against State's hearsay objection."

Petitioner asserts he attempted to testify that Damon Turner told him he had permission to take the generator from the victim's backyard, but the prosecutor objected on hearsay grounds (doc. 1 at 4, 10–12).  Petitioner states defense counsel argued Mr. Turner's statement was not hearsay, because it was not offered to prove the truth of the matter asserted; instead it was offered to negate an essential element of the offenses, specifically, intent (*id.* at 11).  The trial court sustained the State's objection.  Petitioner contends defense counsel should have argued the statement fell under the co-conspirator hearsay exception, Florida Statutes § 90.803(18)(e) (*id.*).  Petitioner argues there is a reasonable probability he would have been acquitted if counsel had argued Mr. Turner's statement was admissible under the co-conspirator hearsay exception (*id.* at 12).

Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 10 at 14–16).

    1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

    2.    Federal Review of State Court Decision

Petitioner presented this claim as Claim Two in his Rule 3.850 motion (Ex. L at 13–15).  The state circuit court adjudicated the claim as follows:

> Defendant's claim concerns an objection made by the State at trial to Defendant's testimony regarding what Mr. Turner said to him.[FN 7]  Defendant alleges that counsel was deficient for failing to argue that Defendant's testimony was permissible pursuant to section 90.803(18)(e), Florida Statutes, which states the following as an exception to the prohibition against hearsay:
>
> > A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy.  Upon the request of counsel, the court shall instruct the jury that the conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.
>
> In other words, independent evidence of the existence of a conspiracy is necessary before the "co-conspirator rule" may be invoked.  See Damon v. State, 289 So. 2d 720, 722 (Fla. 1973).  An express or implied agreement to accomplish, by concerted action, some criminal or unlawful act must be proven.  Additionally, in order for a

statement to be made in "furtherance" of the conspiracy, it is necessary that the statement be made to advance the objective of the conspiracy.

In the instant motion, Defendant claims that he and Mr. Turner were co-conspirators. However, this theory is inconsistent with Defendant's testimony that he thought that Mr. Turner had permission to take the generator. Defendant claims that there was never an agreement to commit a criminal act. In fact, the statements that Defendant claims should have been admitted pursuant to this hearsay exception were Mr. Turner's statements to the Defendant explaining that Mr. Turner had permission to take the generator. These statements cannot be considered "in furtherance" of the alleged conspiracy because according to Defendant, no agreement to accomplish a criminal act existed. Because Defendant would not have been able to prove the existence of a conspiracy, an argument using the "co-conspirator exception" to the hearsay rule would not have been successful and counsel was not deficient for failing to make such an argument. Additionally, Defendant was not prejudiced by counsel's inaction because it would not have changed the outcome of the proceedings.

Furthermore, the opinion of the First District Court of Appeal (DCA) found that this testimony should have been allowed on the theory presented by defense counsel: that it was not offered to prove the truth of the matter asserted, which also demonstrates that counsel was not deficient.[FN 8] Defendant is not entitled to relief.

[FN 7: reference to trial transcript]

FN 8: See Attachment 2 [First DCA's opinion on direct appeal of Petitioner's conviction]. The DCA found the error to be harmless because the excluded testimony would have been cumulative.

(Ex. L at 23–24).

A determination of whether certain evidence satisfies Florida's co-conspirator exception to the prohibition against hearsay is solely within the province of the Florida courts. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this federal court must abide by the state court's determination that Mr. Turner's statements to Petitioner did not qualify under the co-conspirator exception under Florida's evidentiary rules. In light of this

determination, Petitioner failed to show that counsel performed deficiently by failing to assert this basis as grounds for admission of Mr. Turner's statements.  Furthermore, the First DCA held that Mr. Turner's statements were admissible for the reasons argued by defense counsel at trial, which further supports the reasonableness of counsel's argument.  White v. State, 993 So. 2d 611, 613 (Fla. 1st DCA 2008).  Petitioner failed to show deficient performance or prejudice with regard to counsel's failure to argue the co-conspirator hearsay exception.  Therefore, he failed to demonstrate that the state court's adjudication of this claim was an unreasonable application of Strickland.

      C.       Ground Three:  "Counsel was ineffective for failing to file motion for new trial."

      Petitioner argues defense counsel was ineffective for failing to make a motion for new trial on the following grounds:  (1) the grand theft verdict was contrary to law or the weight of the evidence, because there was no direct evidence of the fair market value of the generator; and (2) the burglary verdict was contrary to the weight of the evidence, because Petitioner testified he did not intend to steal the generator, instead he was manipulated by his co-defendant to enter the victim's backyard and take the generator (doc. 1 at 5,  13–15).  Petitioner contends if defense counsel had made a motion for new trial on these grounds, the motion would have been granted (id. at 15).

      Respondent contends this federal court lacks jurisdiction to consider Petitioner's claim to the extent he challenges the theft conviction (doc. 10 at 16–17).  Respondent contends Petitioner was not "in custody" pursuant to the theft conviction at the time he filed his federal habeas petition, because he was re-sentenced to time served upon the First DCA's reversal of the grand theft conviction and remand to the trial court (id.).  As to the burglary conviction, Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (id. at 17–19).

      Habeas corpus relief is only available to those who are "in custody" in violation of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a).  Since it is evident from the record that Petitioner was not in custody on the misdemeanor petit theft conviction and sentence when he filed this petition, he does not meet this requirement, and this court is therefore without jurisdiction to his consider his challenge to that conviction and sentence.  See 28 U.S.C. § 2254(a); Maleng v. Cook, 490 U.S. 488, 490–91, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989); Carafas v.

LaVallee, 391 U.S. 234, 238, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968).  Although traditionally courts have liberally interpreted the "in custody" requirement to include situations such as when the sentence in question enhances or delays the commencement of another sentence, none of these circumstances exist in this case because Petitioner's sentence of time served on the petit theft count was served concurrently with his sentence on the burglary count and therefore had no effect upon his existing sentence.  *See* Garlotte v. Fordice, 515 U.S. 39, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995); Fox v. Kelso, 911 F.2d 563, 568 (11th Cir. 1990).  Petitioner must demonstrate a "positive and demonstrable relationship" between an expired sentence and a current sentence before this court can review a habeas challenge to the expired sentence, *see* McCoy v. Wainwright, 804 F.2d 1196, 1197 n.1 (11th Cir. 1986).

Petitioner's federal habeas petition was filed June 1, 2010, well after his sentence of time served was imposed on December 1, 2008.  Therefore, Petitioner was no longer "in custody" for the petit theft charge when he filed his federal petition.  *See, e.g.*, Sweet v. McNeil, 345 Fed. Appx. 480, 482 (11th Cir. 2009) (unpublished) (district court lacked subject matter jurisdiction to consider ground two of petitioner's federal petition, in which petitioner claimed counsel was ineffective for failing to assert a double jeopardy challenge to convictions of burglary with assault or battery and simple battery, because petitioner was no longer "in custody" on simple battery conviction when he filed his federal petition).[6]  Accordingly, the court will consider Petitioner's ineffective assistance of counsel claim only as it relates to counsel's failure to file a motion for new trial on the burglary count.

　　　　1.　　　Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

　　　　2.　　　Federal Review of State Court Decision

Petitioner presented this claim as Claim Three in his Rule 3.850 motion (Ex. L at 16–18).  The state circuit court adjudicated the claim as follows:

---

[6] The undersigned cites Sweet only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

When claiming that counsel was deficient for failing to make a motion, a defendant must prove that it would have been likely for the motion to be granted in order to demonstrate that he was prejudiced by the inaction of his attorney.

First, defense counsel in the instant case made a motion for judgment of acquittal, which was denied by the Court, on the basis that the State failed to prove the market value of the generator.[FN 9] The issue was subsequently raised on direct appeal, and the DCA reversed and remanded, finding that the judgment of acquittal should have been granted. This Court was directed to vacate Defendant's original grand theft conviction and resentence Defendant to time served for the charge of petit theft.

If trial counsel would have made a motion for new trial on this basis, and assuming that it would have been granted and a new trial ordered, Defendant would have again faced the grand theft charge, and the State would have had another opportunity to prove that the value of the generator qualified for the charge of grand theft. Accordingly, a motion for judgment of acquittal was more appropriate for this claim than a motion for new trial. Because the DCA agreed with Defendant that the motion for judgment of acquittal should have been granted, and Defendant's grand theft charge was vacated, Defendant has essentially already been granted relief on this claim.[FN 10] Therefore, he cannot demonstrate that he was prejudiced by the inaction of his attorney.

Next, Defendant claims that counsel should have made a motion for new trial on the basis that the "intent" element of the burglary charge was not proven.

> "[S]ufficiency of the evidence" is not a proper ground for a motion for new trial in a criminal case. The issue of the sufficiency of the evidence should be raised in the context of a motion for a directed verdict,[FN11] not a motion for new trial . . . Here, Santiago has raised the issue that the trial court erred in denying his motion for a new trial based on the insufficiency of the evidence. In essence, Santiago is asking for a new trial, which is an inappropriate remedy . . . .

Santiago v. State, 874 So. 2d 617, 625 (Fla. 5th DCA 2004). Accordingly, counsel was not deficient for failing to make a motion for new trial on the grounds of the insufficiency of the evidence of Defendant's intent. See generally Kormandy v. State, 983 So. 2d 418, 430 (Fla. 2007) (trial counsel was not deficient for failing to argue a meritless motion to suppress).

Counsel made a motion for judgment of acquittal on the burglary charge, which was denied by the Court, on the ground that the State had failed to prove that

Defendant had entered the building.[FN 12]  A motion for judgment of acquittal made on the basis that Defendant lacked the intent to commit an offense therein would have also been denied because if the evidence were considered in the light most favorable to the State, whether Defendant was aware that he was stealing the generator was a question of fact for the jury to decide.  Moreover, defense counsel argued that Defendant did not have the requisite intent in closing arguments,[FN 13] and the jury apparently agreed with the State that Defendant had the intention to steal the generator.  Defendant has not proven that he was prejudiced by the actions or inactions of counsel.  As Defendant has not overcome the Court's requisite strong presumption that counsel acted according to reasonable professional judgment, Defendant is not entitled to relief.

[FN 9:  reference to trial transcript]

[FN 10:  reference to First DCA's decision on direct appeal]

[FN11] "The directed verdict is a ruling that a reasonable-minded jury could not differ as to the existence of a material fact, that therefore no factual determination is required, and that judgment must be entered for the movant as a matter of law.  In this respect, the motion which triggers the ruling is indistinguishable from its more modern criminal counterpart, the motion for judgment of acquittal.  See Fla. R. Crim. P. 3.380; Fed. R. Crim. P. 29.  **The difference between the names used in criminal and civil practice is 'purely one of nomenclature,' not one of substance**."  Meus v. Eagle Family Discount Stores, Inc., 499 So. 2d 840, 841 (Fla. 3d DCA 1986) (emphasis added).

[FNs 12, 13:  references to trial transcript]

(Ex. L at 24–27).

Under Florida law, when considering a motion for new trial under Fla. R. Crim. P. 3.600(a) based upon the argument that the verdict is against the weight of the evidence, the trial court must exercise its discretion to determine whether a greater amount of credible evidence supported one side of an issue or the other.  *See* Fulword v. State, 29 So. 3d 425 (Fla. 5th DCA 2010); Ferebee v. State, 967 So. 2d 336 (Fla. 2d DCA 2007).  Rule 3.600(a) allows the trial judge to act as a "safety valve" when the evidence is technically sufficient to prove the criminal charge but the weight of the evidence simply does not appear to support the verdict.  *See* State v. Shearod, 992 So. 2d 900, 904 (Fla. 2d DCA 2008); State v. Harris, 660 So. 2d 285, 287 (Fla. 5th DCA 1995).

In the instant case, the evidence regarding Petitioner's intent included the victim's testimony and Petitioner's testimony.  The victim, Mrs. King, testified that on October 9, 2006, she heard noise and her dog barking outside, so she ran out the back door and saw two men putting her generator in a car (Ex. D at 47–50).  She testified she yelled at the men to stop, screamed as loud as she could, and told them she was going to call the police (*id.* at 48).  Mrs. King testified the men stopped, turned around, and stared at her (*id.*).  She became frightened, ran into the house, and called the police (*id.*).  Mrs. King identified Petitioner in court as one of the men who took the generator (*id.* at 53).  On cross-examination, Mrs. King admitted she could not have picked Petitioner out of a line-up, and she admitted he was the only black man in the courtroom (*id.* at 54–55).

Petitioner admitted he was stopped by police on October 9, with a generator in the back seat of his car (*id.* at 82–83).  He testified Damon Turner asked him to give him a ride to "pick up his generator from doing some work he did for this lady" (*id.* at 83).  Petitioner testified he never entered any building or shed on the property, and he had no information that led him to believe that the taking of the generator would be theft (*id.* at 88).  Petitioner did not deny he was one of the men who took the generator.  He testified he had been previously convicted of two felonies (*id.* at 89).  The jury obviously found that the State proved beyond a reasonable doubt that Petitioner entered Mrs. King's dwelling with the intent to steal the generator.[7]

The credibility of Mrs. King's testimony on the intent issue, that is, she yelled to the men to stop and told them she would call the police, and the men stopped and stared at her, and then continued to put the generator in the car, was not impeached.  Although the credibility of her identification testimony was called into question somewhat, identity was not an issue at trial.  Further, Petitioner's credibility was impeached by his admission that he was previously convicted of two felonies.  Therefore, a greater amount of credible evidence did not support Petitioner's side of the intent issue.  Petitioner thus failed to show a reasonable probability the trial judge would have properly granted a motion for new trial on the intent issue of the burglary count if counsel had made one.  *Compare* State v. Coffman, 746 So. 2d 471, 472 (Fla. 2d DCA 1998) (reversing trial court's

---

[7] Mrs. King testified she stored the generator in a shed which was connected to her house by a covered breezeway (Ex. D at 49–50, 53–54).

grant of motion for new trial where defendant was charged with aggravated child abuse; emergency room doctors, as well as physicians at hospital where child was later transferred, unanimously concluded that child was suffering from Shaken Baby Syndrome; doctors testified that child's extensive injuries had to have been inflicted only a few hours before the child was rushed to the hospital; and child was in defendant's exclusive care for most of the day preceding the incident), *and* Harris, 660 So. 2d at 287 (reversing trial court's grant of motion for new trial where there was independent and unimpeached testimony that clearly supported jury's conclusion that defendant deliberately sought out and gunned down victim), *with* Shearod, 992 So. 2d at 904–05 (jury verdict of guilty was against weight of evidence in trial for second-degree murder, and thus proper remedy was to award a new trial; witness who made statement to investigators that defendant was at scene of the shooting wielding a gun was a proven perjurer who did not testify, State indicated in final argument that jailhouse witness who testified he heard defendant say he killed victim was probably not believable, a third witness's testimony was equally consistent with the defendant being an accessory after the fact and not a principal, and, without the evidence from these witnesses, the case was that of three possible shooters with insufficient evidence to establish which one shot victim), *and* State v. Andrews, 802 So 1016, 1022–23 (Fla. 4th DCA 2002) (competent substantial evidence supported trial court's finding that guilty verdict for attempted second degree murder of a police officer was contrary to the weight of the evidence, despite officer's testimony that defendant attempted to run over him with vehicle; defendant testified that he was merely trying to get away because officer had his weapon drawn and began firing at his vehicle, seven bullets struck defendant's vehicle and four of those struck defendant, most of shots fired at defendant were fired by officer after defendant's vehicle had already passed officer, and the only independent witness testified that officer was not in harm's way), *and* State v. Robinson, 771 So. 2d 1256, 1258 (Fla. 3d DCA 2000) (jury's verdict of guilty on charge of sexual battery on victim under 12 years of age was against the weight of the evidence, thus warranting a new trial; while eight-year-old victim's testimony and physical evidence showed digital penetration, defendant totally denied committing any offense, and testified that, while he was babysitting and on telephone, he noticed that victim's hand was underneath her garment, that he snatched her hand from underneath her body, that he got up and washed his hands, that he did not tell victim's mother because she would be embarrassed and

he was preoccupied with personal matters, and that he assumed victim was touching herself because she witnessed her younger sister touching herself at another time).

Additionally, to the extent Petitioner argues counsel should have made a motion for directed verdict on the intent issue (*see* doc. 12 at 4), he likewise failed to demonstrate Strickland prejudice. The court must defer to the state court's determination that the legal standard for a motion for directed verdict is the same as the standard for a motion for judgment of acquittal under Florida law. Deference is also due to the state court's determination that a motion for judgment of acquittal made on the basis that Petitioner lacked intent to commit the burglary would have been properly denied under Florida's standard because, considering the evidence in the light most favorable to the State, whether Petitioner was aware that he was stealing the generator was a question of fact for the jury. Petitioner failed to show a reasonable probability of a different outcome if counsel had moved for a judgment of acquittal on the intent issue. Therefore, the state court's adjudication of Ground Three was not unreasonable under Strickland.

## IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 17th day of May 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**